**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
**CAROLYN SPATAFORA,**

                    **Plaintiff,**        Civil Action No. 1:21-cv-477
                                                 (AKH)(OTW)

  - against -

                                                 **FIRST AMENDED COMPLAINT**
**TOWN SPORTS INTERNATIONAL**
**HOLDINGS, INC.,**

                    **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

      Plaintiff, Carolyn Spatafora ("**Plaintiff**" or "**Spatafora**"), by and through her undersigned attorneys, Law Office of Peter G. Goodman, PLLC, as and for her First Amended Complaint against defendant, Town Sports International Holdings, Inc. ("**Defendant**" or "**Holdings**") (Plaintiff and Defendant shall together be referred to as the "**Parties**"), states as follows:

### Introduction

      1.    This is an action for breach of contract, anticipatory breach of contract, unjust enrichment, and quantum meruit with respect to Defendant's breach of the Amended and Restated Executive Severance Agreement dated as of February 25, 2015, between Town Sports International Holdings, Inc. and Carolyn Spatafora ("**2015 Severance Agreement**"), as amended by the Second Amendment to Amended and Restated Executive Severance Agreement ("**Second Amendment**"), dated March 20, 2019. Plaintiff seeks an award of damages for, among other things, unpaid severance benefits, prejudgment interest, and Plaintiff's costs and disbursements of this action.

**Parties**

2. Plaintiff, Carolyn Spatafora, is an individual residing at 108 Sportsmen Street, Central Islip, New York.

3. Defendant, Town Sports International Holdings, Inc., is a corporation organized and existing under the laws of the State of Delaware, which maintains its principal place of business at 1001 US North Highway 1, Suite 201, Jupiter, Florida.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendant because at all relevant times, Defendant transacts business within New York State, uses real property in New York State, derives substantial revenue from transacting business in New York State, engages in a persistent course of conduct in New York State, is generally present in this State, the subject claim arises out of a transaction occurring in the New York State and, because pursuant to paragraph 10 of the 2015 Severance Agreement, Defendant consented to the personal jurisdiction of this Court for the resolution of any dispute relating to the interpretation, application or enforcement of the 2015 Severance Agreement.

6. Venue is properly laid pursuant to 28 U.S.C. §1391 in the United States District Court for the Southern District of New York because a substantial part of the events or omissions giving rise to the claim occurred in this District and, pursuant to paragraph 10 of the 2015 Severance Agreement, Defendant agreed to the venue of this Court.

**Facts**

A. **The 2014 Agreement.**

7. Effective May 12, 2014, Plaintiff was employed by Defendant as its Chief Financial Officer.

8. On or about May 12, 2014, Scott Milford, Senior Vice President of Human Resources of Defendant's subsidiary, Town Sports International, LLC ("**TSI LLC**"), signed an Executive Severance Agreement – Carolyn Spatafora, dated as of May 12, 2014, between Town Sports International, LLC and Carolyn Spatafora ("**2014 Agreement**").

9. Scott Milford signed the 2014 on behalf of TSI LLC.

10. On or about May 12, 2014, Spatafora signed the 2014 Agreement.

B. **The 2015 Severance Agreement.**

11. On or about February 25, 2015, David Kastin, Senior Vice President and General Counsel of Holdings and TSI LLC, signed the 2015 Severance Agreement.

12. David Kastin signed the 2015 Severance Agreement on behalf of Holdings and TSI LLC.

13. On or about February 25, 2015, Spatafora signed the 2015 Severance Agreement.

14. By including Holdings as a party and obligor to the 2015 Severance Agreement, Spatafora intended to protect herself from the risk that TSI LLC would be unwilling or unable to comply with its obligations under the 2014 Agreement as a result of TSI LLC's declining financial condition and new board leadership.

15. The 2015 Severance Agreement was a binding agreement between the Parties.

16. By entering into the 2015 Severance Agreement, Holdings and TSI LLC intended to amend and restate the 2014 Agreement in order to induce Spatafora to remain in their employ.

17. In the 2015 Severance Agreement, Holdings and TSI LLC offered Spatafora severance payments in exchange for her commitments set forth in the 2015 Severance Agreement.

18. Paragraph 16 of the 2015 Severance Agreement states that the 2015 Severance Agreement "is the entire agreement (together with any equity plan and related award agreement currently in effect between [Spatafora] and Holdings) between the parties with respect to [Spatafora's] employment and supersedes all prior agreements, whether verbal or in writing, including without limitation the [2014 Agreement]."

**C. The First Amendment.**

19. On or about March 31, 2016, Patrick Walsh, Executive Chairman of Holdings and TSI LLC, signed an Amendment to Amended and Restated Executive Severance Agreement ("**First Amendment**").

20. On or about March 31, 2016, Spatafora signed the First Amendment.

**D. The Second Amendment.**

21. On or about March 20, 2019, Patrick Walsh, Executive Chairman of Holdings and TSI LLC, signed the Second Amendment.

22. Patrick Walsh signed the Second Amendment on behalf of Holdings and TSI LLC.

23. On or about March 20, 2019, Spatafora signed the Second Amendment.

24. As amended by the Second Amendment, the terms of the 2015 Severance Agreement remained in full force and effect and was a binding agreement between the Parties.

25. By amending the 2015 Severance Agreement with the Second Amendment, Holdings and TSI LLC intended to induce Spatafora to remain in their employ.

26. By amending the 2015 Severance Agreement with the Second Amendment, Holdings and TSI LLC intended to provide severance to Spatafora in the event she became disabled.

27. Section 2 of the Second Amendment amended Paragraph 2(a) of the 2015 Severance Agreement to provide that Spatafora "shall be entitled to Severance stated herein if she becomes Disabled whether such termination by Employee is prior to or subsequent to a Change in Control. Such Disability being a Qualifying Termination by Employee."

28. Section 3 of the Second Amendment amended paragraph 2(a) of the 2015 Severance Agreement by inserting the following subsection:

> (v) <u>Termination without Cause or a Constructive Termination</u>. If Executive's employment with Company is terminated by the Employee by reason of her Disability, Executive except as set forth below shall have the right to receive Severance Payments as described in Section 3 of the Severance Agreement as if it were a Constructive Termination. Notwithstanding the language of Sub-clause (ii) to the contrary with respect to Bonus for the fiscal year in which the Termination Date occurs same will be paid as paid in and for the year prior to Termination as additional Severance within five (5) days of Employees Termination Date. The provisions of this subparagraph (v) shall apply independent of and notwithstanding whether there is a Change in Control as defined herein or whether the Company is on Budget to pay bonus on the date of Termination for the year in which Termination occurs.

29. The term "Employee" used in the Second Amendment was intended to refer to Spatafora and be synonymous with the term "Executive" as defined in the Second Amendment.

30. In the event Spatafora terminated her employment by reason of her Disability, the 2015 Severance Agreement, as amended by the Second Amendment, did not require Spatafora to provide written notice of her Disability to Holdings or TSI LLC, and did not require Holdings' or TSI LLC's failure to remedy the condition or event of Spatafora's Disability, as a condition precedent to Spatafora having the right to receive Severance Payments as described in Section 3 of the 2015 Severance Agreement as if it were a Constructive Termination.

**E. Spatafora's Termination and Eligibility for Severance Payments.**

31. At all times relevant hereto, Spatafora suffered from orthopedic and autoimmune conditions that constituted a Disability as defined in paragraph 1(e) of the 2015 Severance Agreement.

32. Although not required, on or about November 7, 2019, Spatafora provided written notice pursuant to paragraph 1(d) of the 2015 Severance Agreement to Holdings and TSI LLC, directed to Patrick Walsh, the Chief Executive Officer of Holdings and the President of TSI LLC, and to Stuart Steinberg, the General Counsel of Holdings and TSI LLC, which was within ninety (90) days after the occurrence of the condition or event of her Disability, in which Spatafora described the condition or event claimed to constitute Constructive Termination.

33. On or about November 14, 2019, Holdings filed a Form 8-K with the United States Securities and Exchange Commission which was signed by Holdings' Chairman and Chief Executive Officer Patrick Walsh, in which Holdings acknowledged that Spatafora was taking a leave of absence from her position as Chief Financial Officer of Holdings effective November 7, 2019, in order to attend to a medical disability.

34. Holdings and TSI LLC failed to remedy the condition or event of which Spatafora provided written notice within thirty (30) days of its receipt of Spatafora's written notice.

35. Spatafora terminated her employment with Defendant on or about February 1, 2020, by reason of her Disability, as defined in paragraph 1(e) of the 2015 Severance Agreement ("**Termination Date**").

36. Pursuant to paragraph 2 of the 2015 Severance Agreement, as amended by Section 2 of the Second Amendment, Spatafora's termination of her employment by reason of her

Disability was a Qualifying Termination that made Spatafora eligible to receive Severance Payments from Holdings.

37. Pursuant to paragraph 2 of the 2015 Severance Agreement, as amended by Section 3 of the Second Amendment, as a result of Spatafora's termination of her employment by reason of her Disability, Spatafora has the right to receive Severance Payments from Holdings as if her termination were a Constructive Termination.

38. Paragraph 2(c) of the 2015 Severance Agreement states:

(c) <u>Separation Release Agreement</u>.  The eligibility for receipt of the Severance Payments is expressly conditioned upon the following: (i) the Executive's signing of a release in which the Executive releases and/or waives any and all claims the Executive may have against the Company within the time specified therein but in no event later than fifty (50) days of the Termination Date and (ii) the release becoming effective.  The Company shall provide to Executive the release no later than three (3) days following Executive's Termination Date.  If Executive does not timely execute and deliver to the Company such release, or if Executive executes such release but revokes it, no Severance Payments shall be paid.

39. Defendant failed to provide Spatafora with a release following Spatafora's Termination Date.

40. Defendant's failure to provide Spatafora with a release as required by paragraph 2(c) of the 2015 Severance Agreement was instrumental in preventing or frustrating Spatafora from providing the release to Defendant.

41. As a result of Defendant's failure to provide Spatafora with a release as required by paragraph 2(c) of the 2015 Severance Agreement, Spatafora was excused from complying with the condition precedent of signing a release waiving any and all claims Spatafora may have against the Defendant.

42. Pursuant to paragraph 3 of the 2015 Severance Agreement, Defendant is obligated to provide Spatafora with Severance Payments.

43. Pursuant to paragraph 1(g) of the 2015 Severance Agreement, "**Severance Payments**" is defined as the aggregate gross amount of severance payments determined in accordance with Sections 2 and 3 of the 2015 Severance Agreement to be paid to Spatafora.

44. Pursuant to paragraph 3(a)(i) of the 2015 Severance Agreement, Defendant is obligated to continue to pay Spatafora her annual base salary, less all applicable withholding taxes, for a period of fourteen (14) months from Spatafora's Termination Date (as defined in the 2015 Severance Agreement).

45. Pursuant to paragraph 3(b)(i) of the 2015 Severance Agreement, Defendant is obligated to pay Spatafora her annual base salary, minus applicable deductions, in equal payments on Defendant's regular payroll dates during the fourteen (14) month period following Spatafora's termination of employment.

46. Pursuant to paragraph 3(a)(iii) of the 2015 Severance Agreement, Defendant is obligated to continue Spatafora's health and dental coverage, and continue to pay that portion of the premium that it pays for active employees (grossed up to cover taxes, if applicable) at such times as Defendant makes such payments for its active employees on a monthly basis until the earlier of (i) the second anniversary of the termination date and (ii) the date on which Spatafora becomes eligible for comparable coverage by a successor employer.

47. Spatafora has not become eligible for comparable health and dental coverage by a successor employer.

48. After Spatafora's termination from employment, Defendant:

   a. paid Spatafora her annual base salary for the period from February 17, 2020, to August 30, 2020, in the aggregate sum of $193,173.12;

    b.  paid Spatafora the quarterly premiums for health insurance coverage to which she was entitled, until in or about October, 2020;

    c.  continued Spatafora's dental coverage, until on or about November 30, 2020;

    d.  continued Spatafora's disability coverage; and

    e.  paid Spatafora the bonus to which she was entitled.

49.    On or about December 29, 2020, Holdings filed a Schedule 14F-1 with the United States Securities and Exchange Commission, which was signed by Holdings' Chairman and Chief Executive Officer Patrick Walsh, in which Holdings stated that Holdings had agreed to pay Spatafora fourteen months of salary, bonus, continuation of health, dental and disability coverage for up to two years, and other benefits, and that on February 7, 2020, Holdings paid Spatafora her target Bonus for 2019.

50.    By its conduct, including, without limitation, its payment of Severance Payments and its filing the December 28, 2020 Schedule 14F-1 with the United States Securities and Exchange Commission, Defendant waived all conditions precedent set forth in the 2015 Severance Agreement that are required to be performed prior to Spatafora becoming eligible for receipt of Severance Payments, including, without limitation, the requirement that Spatafora sign a release waiving any and all claims Spatafora may have against the Defendant.

51.    Defendant is obligated to:

    a.  pay Spatafora her annual base salary for the period from August 31, 2020, through the present date, in the aggregate sum of approximately $208,191.78;

    b.  pay Spatafora the premiums for health insurance coverage in an amount to be determined but believed to be approximately $6,108.00; and

    c.  continue Spatafora's dental coverage until on or about February 6, 2022.

52. Defendant has failed to pay Spatafora her annual base salary for the period commencing August 31, 2020, through the present date, in the aggregate sum of approximately $208,191.78.

53. Defendant has failed to pay Spatafora premiums for health coverage for the period commencing October 2020, through the present date, in the aggregate sum to be determined but believed to be approximately $6,108.00.

54. Defendant has failed to continue Spatafora's dental coverage for the period commencing October 2020, through the present date.

55. Plaintiff has demanded payment of the outstanding Severance Payments.

56. Despite Plaintiff's demands, Defendant has failed and refused to pay the outstanding Severance Payments.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

57. Plaintiff repeats and realleges each and every allegation previously set forth as if fully set forth herein at length.

58. Plaintiff has performed all of its obligations, or is excused from performing some or all of her obligations (including signing a release waiving any and all claims Spatafora may have against Defendant), under the 2015 Severance Agreement, as amended by the Second Amendment.

59. Defendant has materially breached its obligations under the 2015 Severance Agreement, as amended by the Second Amendment, by failing and refusing to pay Plaintiff the outstanding Severance Payments, in the aggregate sum of at least $214,299.78, and to continue dental coverage for Spatafora.

60. As a direct and proximate result of said breaches, Plaintiff has been damaged in an amount totaling at least $214,299.78, representing the aggregate amount of the outstanding Severance Payments, plus damages for Defendant's failure to continue dental coverage, plus prejudgment interest.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract – Anticipatory Breach)

61. Plaintiff repeats and realleges each and every allegation previously set forth as if fully set forth herein at length.

62. Defendant is obligated to pay Spatafora her annual base salary through in or about April 2021, in the aggregate sum of approximately $16,716.90 ("**Future Salary**").

63. Defendant is obligated to pay Spatafora premiums for her health coverage and continue her dental coverage through on or about February 6, 2022, in the aggregate sum to be determined but believed to be at least approximately $9,162.00 ("**Future Premiums**").

64. By its conduct and actions, Defendant has rendered itself unable or apparently unable to perform under the 2015 Severance Agreement, as amended by the Second Amendment, without committing a breach that would of itself give Plaintiff a claim for damages for total breach.

65. By its conduct and actions, Defendant has expressed its positive and unequivocal intent not to perform under the 2015 Severance Agreement, as amended by the Second Amendment.

66. Plaintiff has demanded payment of the Future Salary and Future Premiums.

67. Despite Plaintiff's demands, Defendant has failed and refused to pay the Future Salary and Future Premiums.

68.    As a direct and proximate result of the foregoing, Plaintiff has been damaged in the sum of at least $25,878.90, representing the aggregate amount of the Future Salary and Future Premiums, plus prejudgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

69.    Plaintiff repeats and realleges each and every allegation previously set forth as if fully set forth herein at length.

70.    After entering into the 2015 Severance Agreement and Second Amendment, Defendant was enriched by receiving the benefit of Spatafora remaining in its employ.

71.    Defendant was enriched at Spatafora's expense.

72.    Defendant has been unjustly enriched at Spatafora's expense by Spatafora having remained in its employ after the Parties entered into the 2015 Severance Agreement and Second Amendment.

73.    It is against equity and good conscience to permit Defendant to retain the benefit it received from Plaintiff.

74.    By reason of the foregoing, Defendant is required to pay Spatafora the full amount of the value of the benefit it received from Spatafora in an amount to be determined at the time of trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (*Quantum Meruit*)

75. Plaintiff repeats and realleges each and every allegation previously set forth as if fully set forth herein at length.

76. After entering into the 2015 Severance Agreement and Second Amendment, Spatafora performed services for Defendant in good faith.

77. Defendant accepted the services performed by Spatafora by continuing to employ her as its Chief Financial Officer up to her termination date.

78. Spatafora expected to be compensated for the services she provided to Defendant after the Parties entered into the 2015 Severance Agreement and Second Amendment.

79. By reason of the foregoing, Defendant is required to pay Spatafora the reasonable value of her services in an amount to be determined at the time of trial.

WHEREFORE, Plaintiff, Carolyn Spatafora, respectfully requests entry of a judgment against Defendant, Town Sports International Holdings, Inc., as follows:

(a) On the First Cause of Action, damages in an amount to be determined at trial but believed to be at least $214,299.78;

(b) On the Second Cause of Action, damages in an amount to be determined at trial but believed to be at least $25,878.90;

(c) On the Third Cause of Action, damages in an amount to be determined at the time of trial;

(d) On the Fourth Cause of Action, damages in an amount to be determined at the time of trial;

(e) Prejudgment interest as provided by law;

(f) Costs and disbursements incurred in this action; and

(g) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury as to all issues.

Dated:  March 23, 2021

                      LAW OFFICE OF PETER G. GOODMAN, PLLC

By:    s/ *Peter G. Goodman*
       Peter G. Goodman
30 Broad Street, 37th Floor
New York, New York 10004
Tel: (212) 386-7619
peter@goodmanpllc.com

*Attorneys for Plaintiff
Carolyn Spatafora*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document by using the Court's Electronic Filing (CM/ECF) system on March 23, 2021, and service to all counsel of record was accomplished by that system.

Dated:  March 23, 2021                                     s/ Peter G. Goodman
                                                                         Peter G. Goodman